WINSOR, J. Before Levar Tyson pulled a- gun in a strip-club parking lot, he already had at least four felony convictions, including at least one for possession of a firearm by a felon. Tyson had already served part of a seven-year sentence in New Jersey for, among other things, weapon possession. So after the strip-club incident led to a new felon-in-possession conviction, it should have been no surprise that the sentencing court considered Tyson’s track record. The court gave Tyson ten years—below the fifteen-year maximum, but more than the seven years Tyson requested. On appeal, Tyson does not challenge his conviction, and he does not contest the fact that his sentence fell within the permissible statutory range. His sole argument is that the trial court violated due process by announcing a rule that it would not “go backwards” by imposing a lighter sentence than Tyson earned for his earlier convictions. We review for fundamental error. See Cromartie v. State, 70 So.3d 559, 563 (Fla. 2011).[1] I. At the sentencing hearing, Tyson apologized for his conduct and for the burden it put on Florida’s taxpayers. He acknowledged his past convictions, and he explained that he hoped to become a productive member of society. He asked the court for leniency. Through a letter submitted to the court, Tyson’s stepmother'also sought mercy, explaining that although Tyson’s criminal record was “extreme,” he was making efforts to change for the better. Tyson’s lawyer requested a seven-year sentence. The State sought ten years. The prosecutor recounted the facts of the crime, explained Tyson’s prior record, and argued that Tyson was a danger to society. The prosecutor also argued that Tyson’s earlier punishments had been ineffective: “[I]t’s clear by his previous record and continued activity that he has not been deterred by the justice system and by the sentences that he has received in his previous cases from New Jersey.... He continues to commit crimes.” Before pronouncing Tyson’s sentence, the court indicated it would consider the evidence presented at trial, Tyson’s statements at sentencing, the stepmother’s letter, Tyson’s prior record, and all arguments of counsel. It also offered this commentary: And as you all know, obviously, when it comes to folks who have a prior history that come before me, I do look to see not only what the prior offenses are, but what was the prior sentence. Because one thing I am not going to do, is go backwards. That just doesn’t make any sense. Because obviously if they’ve been convicted, and given two years and they still are committing crimes and then they’re convicted and given four years and they’re still committing crimes and then they’re convicted or come before— we’re going to just keep going up until perhaps some amount of time will make a difference and wiíl send the proper message to the defendant. The court .then imposed the ten-year sentence we now review... ÍL In Cromartie v. State, the supreme court held that a trial judge’s stated policy to always “round up” sentences to the next whole year violated due process because it “improperly extended” the defendant’s sentence in “an arbitrary manner.” 70 So.3d at 564. Relying almost exclusively on Cromartie, Tyson argues that the trial court’s announced I’m-not-going-to-go-backwards policy likewise violated due process. We cannot accept this argument. Unlike the Cromartie, sentence, there was nothing arbitrary about Tyson’s ten-year sentence. In Cromartie, the trial judge had sentenced the defendant to eight years, after “rounding up” from the 7.8 year minimum. Id. at 560. After the discovery of a scoresheet error led to re-sentencing, the court again “rounded up”—but this time from 6.16 years (the revised scoresheet minimum) to seven. When pressed about the increased effect of the rounding, the judge’ said, “I round off in years. What can I tell you? That’s just my way.” Id. She then shared her view that it “really doesn’t make a difference. I’m telling you in the- real world whether you give somebody nine years or ten years doesn’t much matter, you know. It just doesn’t. And . to have—that’s an argument over minutia.” Id. In other words, the trial judge rounded up for no reason at all, other than her view that -it made no difference and was just “her way.” This, the Florida Supreme Court held; was arbitrary and violated due process.[2] Tyson’s sentence, on the other hand, came after the trial court’s consideration of Tyson’s particular case. The court evaluated the whole record—Tyson’s statement, the facts of his crime, and his substantial criminal history. The sentence that followed was not the product of some arbitrary rule; it was not ordered “without any reflection on the individuar merits of this particular defendant’s case,” Pressley v. State, 73 So.3d 834, 838 (Fla. 1st DCA 2011). On the contrary, it was the product of the court’s studied consideration. Cf. McKinney v. State, 27 So.3d 160, 162 (Fla. 1st DCA 2010) (criticizing trial court’s commentary on utility of youthful offender program but concluding “we are satisfied that the court’s [sentencing] decision ... was properly based upon a consideration of Appellant’s circumstances and the serious nature of his crimes, rather than the court’s opinion of the' youthful offender program”). Moreover, to the extent the trial court imposed a strict I’m-not-going-to-go-backwards policy, we aré certain it made no difference. In Cromartie, the supreme court concluded'that “the trial judge’s stated policy ‘improperly extended’ Cromartie’s incarceration.” 70 So.3d at 564. Absent that arbitrary policy, the Cromartie sentence would have been shorter.[3] Not so here. Indeed, Tyson himself asked for . seven years, which apparently exceeds the time he did in New'Jersey, He cannot ask for seven years below and argue here that it was error to not consider less. Cf. Universal Ins. Co. of N. Am. v. Warfel, 82 So.3d 47, 65 (Fla. 2012) (“Fundamental error is waived under the invited error doctrine.”). The dissent convincingly explains the problems with rigid never-backwards policies: not all crimes áre equal, people change, and so forth. But none of that helps us here, where the stated policy did not increase the sentence. Nothing in Cromartie requires resentencing whenever a judge announces a “policy” that might—in some other case—yield a due process violation. Cromartie would not require, for example, a new sentence if a judge announced he never gave probation but then detailed why the particular circumstances of that particular case justified a decades-long prison sentence. The trial, court did .not violate Tyson’s due process rights. AFFIRMED. KELSEY, J., concurs; MAKAR, J.,. dissents with opinion. . Tyson argues he preserved this issue by filing a rule 3.800(b) motion below. But Cro-martie foreclosed this argument, making clear our review is only for fundamental error. See 70 So.3d at 563. . This court, too, found merit in the argument that the "policy of mechanically rounding up a prison sentence to the nearest whole number .,. without any reflection on the individual merits of a particular defendant's case is arbitrary.” Cromartie v. State, 16 So.3d 882, 883 (Fla. 1st DCA 2009), quashed by 70 So.3d 559 (Fla. 2011), We held, though, that the issue was unpreserved. Id. . Notably, the supreme court did not remand for consideration of a- new sentence;, it remanded with directions, that Cromartie be sentenced ‘‘at the bottom of the guidelines.” Cromartie, 70 So.3d at 564. It obviously found the trial court would have imposed a minimum sentence but for its.arbitrary rounding policy.